There will be an order accordingly.

---

## ADAMSON v. ADAMSON.

(District Court, E. D. Pennsylvania.   July 8, 1920.)

### No. 1973.

1. **Trusts ☞237—Cestui que trust has election to accept or reject unauthorized investment.**

A trustee, who invests money of his cestui que trust, not intrusted to him for the purpose of investment, assumes the risk of proving that the investment was by authority; otherwise, he makes it subject to the right of the cestui que trust to either take the investment or reject it and demand the money.

2. **Principal and agent ☞161(2)—Investment by agent held unauthorized and subject to rejection by principal.**

Defendant, who occupied a fiduciary relation to complainant and acted as her agent to receive money and property belonging to her, *held* to have invested the same in the stock of a corporation without her authority, which gave her the right at her election to demand repayment in money, of which right of election she was not deprived by the fact that the agent acted in good faith, believing that the principal approved or would approve of the investment made.

In Equity.   Suit by Agnes M. Adamson against William Adamson. Sur trial hearing on bill, answer, and proofs.   Decree for complainant.

Lester B. Johnson, of Philadelphia, Pa., for plaintiff.
John A. Brown, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.   We dispose of this case by making general findings, in the nature of a history of the case, covering both its fact and its juridical history, so far as may be necessary or helpful to an understanding of the application of the specific fact findings made and the conclusions of law reached with respect to the legal principles also applicable.   We will follow this narrative statement with specific findings of fact and conclusions of law, and, in addition, will answer the requests for fact findings and conclusions of law submitted by counsel.   This general history of the case will be blended

with such a discussion of the fact features as will disclose the grounds upon which the findings are made.

## History of the Case.

Broadly stated, this case is an illustration of the disputes which almost always are provoked whenever one person of business training and experience undertakes, in a business transaction, to act without compensation for another person, who does not know his rights or what is for his real interests. The almost certainty of misunderstandings is emphasized when such a trustee is a man, and the cestui que trust is a woman, and doubly emphasized when there is a relation either of blood kinship or marriage between them.

The evidence in this case would justify the finding, even if we were not asked by both parties to make it, that the relations between the plaintiff and defendant were relations of the utmost confidence and fullest trust, and that in addition to this a feeling of affection of one toward the other of such a degree that the plaintiff was in loco parentis and the defendant the intended recipient of the testamentary bounty of the plaintiff. Some sort of suspicion, it is true, is now cast upon the disinterestedness and the genuineness of the display of affection by the defendant, and some question raised of whether, in the transactions precedent to those with which this cause concerns itself, and which led up to the latter transactions, the plaintiff had departed from the standard of disinterestedness in what he did; but these aspersions have no other purpose than to base an attitude of suspicious scrutiny of his actions. All we feel called upon to do is to meet what is in effect the joint request of both sides, by making the finding that this relation of trust and confidence did exist between the parties, and that the defendant, in dealing with the property of the plaintiff with which we are now concerned, was acting as trustee for the plaintiff.

The plaintiff had succeeded to the ownership of shares of stock in a limited partnership or joint-stock company, known as M. L. Shoemaker & Co., Limited, organized under the provisions of the Pennsylvania act of assembly approved June 2, 1874. This concern was prosperous. Although it had those characteristics of a corporation which the law confers upon an organization of this kind, it was in real truth and fact a partnership or firm, and originally had been composed of those who were active in its business. The result was that the earnings of the business were distributed among those who managed its affairs in something like "just proportion to the source from which the profits sprang." In the course of years, however, by the death of some of the members and the transfer of the shares in the joint-stock company, persons became entitled to a share of the earnings who contributed nothing to the success of the company beyond the use by the company of the capital which the share represented.

In consequence of this changed relation of the partners to each other, the purpose came to the active partners to wind up the affairs of the joint-stock company and turn over its business to a new organization, membership in which was to be limited to those who were active in the management of its affairs.

Preliminary to the adoption of the liquidating resolution, and perhaps as preparatory to it, two policies were followed. One was to declare very liberal dividends. These were not limited always to the actual current earnings of the concern, and a draft was made upon the accumulated past earnings to make up the dividends which were declared. The other change of policy, and this was not adopted until a short time before the dissolution, was to pay what are characterized as unduly liberal salaries to the managing partners. The expected, if not unavoidable, result followed of discord among the members; those who had not been brought into the project of the new organization looking upon the whole plan as a freeze-out and resenting it as such.

We feel compelled to make the finding that the plaintiff, so far as she was capable of forming any definite purpose, was desirous of retaining her interest in the business, and, so far as she was capable of an understanding of what the project on foot was, wished to be a party to the new venture, taking in the new organization as large an interest as she could secure, limited only by what she was able to take, and this in turn being limited by what she had in the joint-stock company. Directly this represented 17 shares, subject to the payment of $17,000. For many reasons, one of which was her utter incapacity to attend to any business, and another of which was her expected absence on a trip to the Pacific Coast, it was arranged that her stock in the joint-stock company should be transferred to the defendant; she retaining, however, her interest therein after payment of what was owing thereon. There was another, and probably the controlling, purpose in making this arrangement, which may have been, and probably was, for obvious reasons, not disclosed to the plaintiff. This was that although, as already found, she desired to go into the proposed corporation, which was to take over the business of the joint-stock company, the organizers of this second company were unwilling to have her with them. They were willing, however, and indeed desirous, of having the defendant with them, and having him take as large an interest in the new venture as he could take. This was the real inducement to the making of the arrangement which was made. It had as its result that with respect to the other stockholders in the new company the defendant was a joint owner with them, and the plaintiff had no concern with the affairs of the new company. With respect to the plaintiff and defendant, however, the defendant was the owner of that part of the stock which came to be issued to him, so far as the source of the money which paid for it came from sources other than the plaintiff; but, so far as the stock held by him was issued for a consideration which flowed from the plaintiff of this part of the stock in his name, he was merely the holder of the legal title, the beneficiary interest therein being in the plaintiff.

This brings us to the point of the dividing of the ways between the parties. The theory of the plaintiff is that the defendant was acting for the plaintiff in the mere capacity of an attorney in fact, clothed with authority and power to receive whatever the plaintiff was entitled to receive upon the liquidation of the affairs of the joint-stock company, and to account to the plaintiff for what was thus received.

The position of the plaintiff further is, and it may be here fully stated, that the defendant must account to the plaintiff in money for what he received, and that he cannot account to her in shares of stock in the new company, without proof that the investment of the plaintiff's money in the stock of the new company was at her direction, or at least with her consent, and that the situation, as the defendant himself created it by what he did and what he failed to do, is such that the plaintiff has the right of election or option to take either money or stock as she may choose.

This is on the familiar doctrine that one with moneys in his hands belonging to another, who, without the authority of the one to whom the money belongs, invests it in a business venture, does what he does subject to the right of the person for whom he is acting to affirm what was done and take the investment, or to disaffirm it and demand payment of the money as if uninvested.

The position of the defendant, on the other hand, is that a transfer of this stock was made to him for the express purpose and with the intent that he was thereby clothed with power to become a party to the reorganization scheme, investing therein for the joint-stock company and all which was thus received.

The affairs of the joint-stock company were in regular course wound up through liquidating trustees appointed for the purpose. A company was also incorporated, and the tangible assets, formerly belonging to the joint-stock company, together with its good will as a going business, were in due course sold to the corporation, who thereafter conducted the business. At this sale settlement was made by the liquidating trustees, allowing a credit on the purchase price for what those of the members of the joint-stock company who were stockholders in the corporation were entitled to receive out of the assets of the joint-stock company, and the balance of the purchase price was received in cash. The liquidating trustees preserved a record of this settlement, by charging themselves in their account with the moneys thus actually received and charging themselves with what was not received as money, offset by a corresponding distribution credit. There is, in consequence of this, a differentiation which might be made between what the defendant received from the liquidating trustees on behalf of the plaintiff in money and the amount of the credit before mentioned, which belonged to her, not in money, but as if it were in money. As this credit approximated one-half of all to which the plaintiff was entitled on the dissolution of the joint-stock company, it might be found that the plaintiff received one-half of the fund with which he was chargeable in money, and the other half not in money, but as if it were money, and being in reality in a claim to the stock of the corporation to a corresponding sum.

Counsel for plaintiff and defendant, however, each and both have asked us to disregard any such distinction, and each has expressed his willingness to stand or fall by the finding which may be reached upon the whole transaction, as if the fund were all represented by money dividends, which had been received by defendant from the joint-stock

company and invested in stock of the new company. The practical situation presented is in consequence this:

The defendant, being called upon to account to the plaintiff, acknowledges his liability to account, and does so in effect by offering, to the defendant what we will call 660 shares of the stock of the corporation, at the par value of $100 each. This accounting the plaintiff rejects, by repudiating the investment of the moneys received by the defendant in this stock, and asserting the liability of the defendant to account, not in shares of stock, but in money.

The relations of the parties are further complicated by another transaction. As has already been stated, the defendant was the intended testamentary beneficiary of the plaintiff. She had made her will, by which she gave her holdings in the joint-stock company to the defendant upon the payment by him of $17,000, which was very much less than its estimated value. The sister of the plaintiff was then living. All this was before the proposal to dissolve the joint-stock company. After the organization of the company, which succeeded the joint-stock company, the plaintiff expressed her wish to change her will. This she did by a bequest to the defendant of stock out and out. The sister was then deceased.

There is a controversy whether what we have called the will of the plaintiff was by its terms the gift of the plaintiff's interest in the joint-stock company or in the corporation. This was followed or accompanied by a gift inter vivos of the same interest, subject to the reservation that the plaintiff should receive the dividends during her life (less the interest on the $17,000).

There is a like controversy over the averred and denied ambiguity of this gift with respect to whether it is in terms a gift of an interest in the joint-stock company or in the reorganization company.

Much and practically all of the testimony and evidence adduced on the part of the plaintiff has been directed to the acts and conduct of the defendant, in order to found an accusation that the defendant throughout all his dealings with the plaintiff has confused what was done for the purpose of blinding the plaintiff and hiding from any one who might attempt an investigation what the real truth of the transactions was.

The testimony and evidence on behalf of the defendant, on the other hand, is directed to the showing that the defendant had acted throughout, not merely as a faithful trustee, but that the results of his stewardship and the services rendered to the plaintiff, both in the settlement of her husband's estate and since, had been very much to her benefit. The defendant had, it was true, conducted himself in many respects as if the stock in this corporation had belonged to him, and not to the plaintiff. This, however, was only in his relations to other parties, and not with the plaintiff. There was good occasion for this. In the first place, the stock could not have been secured, if the plaintiff had been its avowed owner, because those who went into the new venture would not have associated themselves with the plaintiff. Another thing was that the defendant looked upon himself as the owner of this stock, subject to the right of the plaintiff to receive the dividends thereon,

and this, under the provisions of the will and deed of gift, was the actual situation.

We deem it wholly unnecessary to go into any findings either of commendation or criticism of the defendant. Such findings would have no other practical result than either the vindication or condemnation of the defendant. The situation, as we find it to be, is this:

[1] The defendant was and is in a fiduciary relation to the plaintiff. As her attorney in fact or agent he received moneys and property belonging to her, which he still holds, and which he admits to hold, as trustee for her. It follows, as a consequence, that he must account to her in money for what he has thus received, and he cannot compel her to accept of any investment which he may have made of this money, unless such investment was made at her direction, or with her knowledge and consent. A trustee who voluntarily invests the moneys of his cestui que trust (unless he is a trustee to invest and keep invested) puts himself in a position of assuming the risk of being able to show that the investment was made by authority of the principal, and if the investment was without authority, and a wholly voluntary one, he makes the investment subject to the right of the cestui que trust to either take the investment or reject it and demand the money.

[2] It follows that this defendant is bound to give the plaintiff the option to take either the shares of stock in which her money was invested by him, or to demand the money thus so invested, unless the finding can be made that the investment was made by her direction, authority or consent. In transactions between parties who hold relations of the character referred to, it is not enough that the trustee acted in good faith, and thought the cestui que trust was satisfied to have the investment made. The finding must go to the extent that the one to whom the money belonged directed the investment to be made, or authorized it, or consented to it, so far that it would be an inequitable thing to repudiate the investment, and because of this the cestui que trust is estopped from the exercise of any choice of election between the investment and the money.

We are unable to make such finding in this case, and our conclusion in consequence is that the plaintiff is not estopped from asserting the right of election which she otherwise has.

There is this further observation to be made, which brings us to the real kernel of this case. The defendant, as already observed, has made a very frank avowal of his trust relations with the plaintiff. He claims to have acted toward her at all times with due fidelity, and that his management of her interests has been crowned with success. Naturally he repudiates the charges, both of bad faith and bad management.

Whether it would be to the financial advantage of this plaintiff to accept of the stock which the defendant admits belongs to her, or whether it would be to her advantage to take her money, with the consequence that the stock would belong to the defendant, freed and clear of all trusts, is a question to which no clear answer can be given under such evidence as was presented.

Counsel for defendant has stated, and this statement we now

put of record as full notice to the plaintiff, that the stock is believed to have a greater value now than when issued. The defendant is therefore perfectly free to offer to the plaintiff her choice of ownership in the moneys which bought the stock or in the stock itself. In answer to this offer, with the consequent freedom which an election to take the moneys gives to the defendant, the plaintiff has elected to take the money. Whether the stock or the money is the property of the plaintiff, it is subject to whatever effect the deed of gift may have, the substantial intendment of which was that the plaintiff should have a life interest, with remainder in the defendant.

The conclusion reached is that, for the protection of the plaintiff, and of the defendant as well, a decree should be made finding defendant to have in his hands the moneys received by him from the liquidating trustees of the joint-stock company, subject to whatever interest therein belongs to him under and by virtue of the agreement between the plaintiff and the defendant. We have not the figures before us from which the decree above suggested may be entered. We understand there is no controversy over these figures. The parties may submit drafts of a decree in accordance with the views above expressed, and the findings of fact and conclusions of law herewith submitted. We retain jurisdiction of the cause for the purpose of determining the form of this decree, in the event of the parties differing with respect thereto.